## STERLING TRADING, LLC

v.

## UNITED STATES of America, et al.

## No. SACV 07–915 JVS (ANx).

United States District Court,
C.D. California.

Feb. 14, 2008.

George M. Jones, Weiss and Jones, Long Beach, CA, John M. Sheldon, Paul J. Kozacky, Kozacky and Weitzel P.C., Chicago, IL, for Sterling Trading LLC.

Assistant U.S. Attorney SA–CV, Office of U.S. Attorney, Santa Ana, CA, for United States of America and Department of the Treasury.

*Order Denying Petition to Quash and Granting Cross–Petition to Enforce IRS Summonses*

JAMES V. SELNA, District Judge.

Petitioner, Sterling Trading, LLC ("Sterling Trading") petitions this Court to quash the third-party summons served on Jimmy B. Summitt ("Summitt") by Respondent, United States of America, Department of the Treasury, Internal Revenue Service ("IRS"). The IRS counter-petitions to enforce the summons.

I. *Background*

On July 20, 2007, the IRS served Summitt with a summons to appear for examination on September 7, 2007 and to produce documents as indicated in the rider. (Petition ¶¶ 4, 6, Ex. A.) Summitt indirectly owns 73.5% of Sterling Trading. (Weinger Decl. ¶ 16.) Sterling Trading received notice of the third-party summons by service on July 23, 2007. (Weinger Decl. Ex. 1, "Summons.") It filed this petition to quash on August 8, 2007.

The summons was issued in connection with an IRS investigation into Distressed Asset and Debt transactions, which resulted in taxpayer claimed losses of $39 million in 2003 and $119 million in 2004, and which the IRS characterizes as abusive tax shelters. (Weinger Decl. ¶¶ 2–3.) The Court notes that there are evidently more than a dozen other petitions to quash similar summons in other district courts around the country. (Response to Counter-petition p. 4.) The Judicial Panel on Multi–District Litigation denied petitioners' request to consolidate and transfer the litigation. (Docket No. 27.) Accordingly, the Court now decides the petition and cross-petition before it.

II. *Legal Standard*

■ The IRS has "expansive information-gathering authority" to determine tax liability under the Internal Revenue Code, including by issuance of summonses to taxpayers and third-party record holders. *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); I.R.C. § 7602. Taxpayers may petition to quash such summonses and the IRS may petition to enforce them. I.R.C. §§ 7604, 7609. In either type of action, the IRS must make a prima facie showing "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the

purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed." *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The IRS need only make a "minimal" showing, and "assertions by affidavit of the investigating agent that the requirements are satisfied are sufficient to make the prima facie case." *Liberty Financial Services v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985).

■ Once the IRS has made this showing, the burden shifts to the taxpayer to disprove one or more of the *Powell* requirements, or show that enforcement would be "an abuse of process, *e.g.,* that the summons was issued in bad faith for an improper purpose." *Liberty Financial Services,* 778 F.2d at 1392; *United States v. Jose,* 131 F.3d 1325, 1328 (9th Cir.1997). The taxpayer's burden is heavy, and he "must allege specific facts and evidence to support his allegations." *Liberty Financial Services,* 778 F.2d at 1392.

### III. *Discussion*

#### A. *IRS's Prima Facie Showing*

The IRS has submitted a Declaration by Agent Larry Weinger ("Weinger") that addresses each of the four *Powell* requirements. (Counter–Petition p. 2; Weinger Decl. *passim.*)

##### i. *Legitimate Purpose*

■ The IRS is authorized to issue summonses "in good faith pursuit of the congressionally authorized purposes of § 7602." *United States v. La Salle Nat'l Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). These purposes include: "[1] ascertaining the correctness of any return, [2] making a return where none has been made, [3] determining the liability of any person for any internal revenue tax. . . ." I.R.C. § 7602(a).

Here, Weinger states that "the examinations concern the correctness of the returns, Form 1065 Return of Partnership Income, for taxable periods January 1, 2003 through December 31, 2004 filed by Sterling Trading, LLC." (Weinger Decl. ¶ 4.) He also states that the summons has the additional legitimate purpose of ascertaining "the correctness of returns filed by, and the correct tax liabilities of the participants [*i.e.* Summitt] who claimed losses through their interest in one or more of Petitioner [*i.e.* Sterling Trading]." (Id.)

The IRS has indicated that it issued the summons on Summitt for purposes authorized under § 7602 and therefore satisfies the first *Powell* requirement.

##### ii. *Relevance*

■ The IRS is authorized to inquire as to all items that may be of "potential relevance to its investigation." *United States v. Arthur Young & Co.,* 465 U.S. 805, 814, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). Materials requested by summons are potentially relevant to an IRS investigation when they "might throw light upon the correctness of the return." *David H. Tedder & Assocs. v. United States,* 77 F.3d 1166, 1169 (9th Cir.1996) (quoting *United States v. Goldman,* 637 F.2d 664, 667 (9th Cir.1980)). In other words, materials summoned are relevant if the IRS has "a realistic expectation rather than an idle hope that something may be discovered." *Id.* (citing *Arthur Young & Co.,* 465 U.S. at 813–14, n. 11, 104 S.Ct. 1495.)

■ In this case, Weinger outlines the way in which each of the categories of requested documents is relevant to the IRS's investigation into the correctness of Sterling Trading's partnership return and Summitt's returns. The first category requests "[a]ll documents regarding legal advice or tax advice in connection with your

participation in Sterling Trading." (Summons Rider p. 2.) Weinger states that documents responsive to this request are relevant to whether Summitt conducted due diligence and sought the opinions of advisors. (Weinger Decl. ¶ 22.) Since Summitt has a 73.5% interest in Sterling Trading, the due diligence he undertook in connection with the transactions here is directly relevant to whether penalties may be imposed on him as well as whether they can be imposed on Sterling Trading. (Reply Br. p. 7.)

■ The second category requests "[a]ll documents discussing or purporting to describe the anticipated tax benefits, or lack thereof, of Sterling Trading." (Summons Rider p. 2.) Documents responsive to this request are relevant to whether Summitt's investment in Sterling Trading was motivated by tax reasons in part or in full or for other economic reasons. (Weinger Decl. ¶ 19; Counter-petition p. 8; Gov't Reply Br. p. 6.)

■ The third, fourth and sixth categories request "[a]ll engagement letters . . . and correspondence relating to legal . . . or tax advice relating to Sterling Trading," "[a]ll documents . . . related to any fees for legal . . . and tax advice . . . incurred.. in connection with Sterling Trading," and "[a]ll documents showing payment of funds . . . in connection with Sterling Trading." (Summons Rider p. 2.) Weinger states that all of these categories relate to the "income and expenses" of Sterling Trading. (Weinger Decl. ¶ 20.) Sterling Trading's income and expenses are obviously related to its tax liability.

■ The fifth category requests "[a]ll minutes, notes . . . and other recordings relating to . . . meetings . . . in which Sterling Trading . . . was discussed." (Summons Rider p. 2.) Weinger states that any responsive documents would be relevant in as far as they "reflect on the facts and circumstances of the transactions."

(Weinger Decl. ¶ 22.) These documents might also throw light on Summitt's economic or tax-related motives for participating in the transactions, which would be relevant to both Sterling Trading's as well as Summitt's returns.

The Court is satisfied that for each of the categories of documents requested, the IRS has a realistic expectation that it might discover information pertaining to the correctness of Sterling Trading's and Summitt's returns.

### iii. *Documents not in IRS's possession*

Weinger clearly states that "[t]he IRS is not in possession of the summoned information." (Weinger Decl. ¶ 10.) He notes that "[w]hile the IRS has obtained information from some taxpayers and third parties, Petitioner has not provided the records sought by the summons." (Id.) The IRS has therefore established the third element of its prima facie showing.

### iv. *Administrative Steps*

When the IRS serves a summons on a third-party recordkeeper, it must give notice to the person identified in the summons "within 3 days of the day on which such service is made." I.R.C. § 7609(a)(1). Since Summitt was served with the summons on July 20, 2007, and Sterling Trading was served with notice on July 23, 2007, the IRS is in compliance with the notice requirement. (Summons p. 2.) Moreover, Weinger states that the IRS followed all procedures required by the Internal Revenue Code. (Weinger Decl. ¶ 9.)

Accordingly, the Court finds that the IRS has made an adequate prima facie showing of good faith under *Powell.*

### B. *Sterling Trading's Rebuttal*

Given that the IRS has made a prima facie showing that the summons were is-

sued in good faith and should be enforced, Sterling Trading must disprove one or more of the *Powell* factors or show that the IRS was, in fact, acting in bad faith.

i. *Legitimate Purpose*

■ To meet its burden, Sterling Trading must show not merely that the IRS issued the summons for *some* improper purpose, but rather that there is no legitimate purpose for which it was issued. Thus, "[e]ven the co-existence of an improper purpose would not prevent enforcement of the summons if the existence of a legitimate purpose was not rebutted by the taxpayer." *United States v. Stuckey,* 646 F.2d 1369, 1375 (9th Cir.1981).

Sterling Trading argues a) that the IRS issued the summons to Summitt as part of a "nationwide effort to harass and intimidate petitioners," b) that the IRS has admitted that the transactions in question are "not abusive," and c) that the summons was issued as a "pre-litigation discovery tool" intended to evade the more limited discovery available in Tax Court. (Response to Counter-petition pp. 1, 17, 21, 23.) The Court takes us these arguments in turn.

a) *Harassment*

■ Sterling Trading claims that the "nationwide harassment effort" is evidenced by the facts that 1) the IRS issued a public Settlement Initiative Notice and threatened investors (presumably including Summitt) with penalties if they refused to settle and 2) the IRS threatened one of Sterling Trading's attorneys, Sweta Shah, with disciplinary action for her delayed responses to IRS document requests. (Response to Counter-petition pp. 18–19.) The only evidence Sterling Trading submits in support of these contentions are affidavits by John E. Rogers ("Rogers")

and by Sweta Shah ("Shah"), an associate with Seyfarth Shaw, LLP, who was assigned to work on the Sterling Trading matter by Rogers. (Shah Aff. ¶ 2.) Sterling cites a single paragraph from Rogers' affidavit to demonstrate the IRS's threats to investors: "Prior to issuing [Information Document Requests], the IRS attempted to settle with the individual investors of each petitioner and other similarly situated parties." (Rogers Aff. ¶ 30; Response to Counter-petition p. 18.) The mere fact that the IRS attempted to settle with taxpayers, which is readily admitted by the IRS, hardly amounts to a "threat." (Weinger Decl. ¶ 27.) The Court finds that the fact that the IRS announced terms for possible settlement with taxpayers is not adequate to carry Sterling Trading's heavy burden. (Weinger ¶ 27; Rogers ¶ 30.)

With respect to its claim that the IRS harassed and threatened its attorney, Shah, Sterling submits an affidavit in which Shah describes the "threats." (Response to Counter-petition p. 18.) First, in her one-page, sixteen-line affidavit, Shah states that IRS Agent Ray Tabor told her over the telephone that the date by which she proposed to respond to the Information Documents Requests was "unacceptable," and that "he would be forced to take action pursuant to 'Circular 230'." [1] (Shah Aff. ¶ 3.) She also summarizes a letter that IRS Agent Elise Gardner ("Gardner") sent her in which Gardner noted that Shah's response to one information request was incomplete and that "[t]he Territory Manager will further review the matter to the Director of Practice for disciplinary proceedings," and further stated that Shah's "continued practice before the Service requires a timely response to requests made in the conduct of an examination." (Shah

---

**1.** 'Circular 230' refers to an IRS regulation which requires practitioners to comply with

information requests. (Response to Counter-petition p. 19.)

Aff. ¶ 4; Response to Counter-petition Ex. D.) Shah does not use the word "threat" in her affidavit. Moreover, the letter Shah received from Gardner was in connection with an examination of Mr. Lancer Barton, investor of Ironwood Trading, LLC, and Lonsway Trading, LLC, not in *connection with Sterling Trading or Summitt*. (Shah Aff. ¶ 4.) Shah does not state, and Sterling Trading does not claim, that the IRS made any threats or engaged in other harassing conduct with regard to Sterling Trading or Summitt in this matter.

While a particular agent's motive is relevant to the determination of whether the "institutional posture" of the IRS was to harass a taxpayer, it is not conclusive. *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1226 (7th Cir.1997). The statement by Tabor and the letter sent by Gardner, even if interpreted as evidence of those individual's motives to harass, do not adequately show that the IRS had an institutional posture to harass the taxpayers at issue in this case; namely, Sterling Trading and Summitt.

Finally, Sterling Trading claims that the IRS is withholding a critical document[2] that "amounts to the IRS's policy pertaining to harassing legitimate business bad debt deductors," and says that "[a]n inference should be drawn in favor of petitioners about the impropriety in the IRS policy." (Response to Counter-petition pp. 19–20.) The Court declines to infer that the IRS is pursuing a policy of harassment from Sterling Trading's unsupported assertion that this is the case.

b) *The IRS's Purported Admission That the Transactions Are Non–Abusive*

Further, Sterling Trading claims that the IRS issued the summons "despite acknowledgment by the IRS that petitioners have engaged in lawful transactions." (Response to Counter-petition p. 21.) In support of this claim, Sterling Trading relies on Rogers' statement that "[a]uditors admitted to me that they considered petitioners' efforts to comply with tax laws 'sincere.'" (Rogers Aff. ¶ 31.) This statement, assuming it was made, does not amount to an admission that the transactions that resulted from those "sincere" efforts were not, in fact, impermissible tax shelters. As the IRS points out, "'sincerity' is irrelevant to determination of Petitioners' tax liabilities." (IRS's Reply p. 4.) Moreover, the IRS is empowered to conduct investigations "and need not meet any standard of probable cause to obtain enforcement of [its] summons." *Powell*, 379 U.S. at 57, 85 S.Ct. 248.

c) *Pre-litigation Discovery Tool*

Finally, Sterling Trading claims that the IRS issued this summons to obtain documents in advance of litigation and to circumvent the "more restrictive discovery rules" it would face in United States Tax Court. (Response to Counter-petition p. 23.)[3]

Courts look to the timing of a summons relative to the commencement of litigation in order to evaluate validity in the face of such allegations. *PAA Man-*

---

**2.** The proceedings in which Sterling Trading alleges the IRS has withheld the requested document, namely *Kozacky & Weitzel, P.C. v. United States*, Case No. 1:07–cv–3854 (N.D.Ill.), are not before this Court.

**3.** Similarly, it contends that the IRS issued the summons to extend the statute of limita-

tions in which the IRS may issue a Final Notice of Partnership Adjustment ("FPAA"). (Response to Counter-petition p. 39.) This contention lacks merit, particularly in light of the fact that the IRS has already issued a FPAA to Sterling Trading. (Counter-petition p. 13; Weinger Decl ¶ 29.)

*agement, Ltd. v. United States*, 962 F.2d 212, 219 (2d Cir.1992). Where the summons is issued before the commencement of judicial proceedings, that summons is generally not found to undermine the discovery process. *Id.* Here, the IRS issued the summons to Summitt on July 20, 2007. Sterling Trading did not commence litigation against the IRS in Tax Court until September 13, 2007. (Response to Counter-petition p. 45.) Thus, the timing of the summons does not suggest that the IRS intended the summons as a pre-litigation discovery tool, particularly where the litigation was initiated by Sterling Trading and not the IRS.

The single piece of evidence Sterling Trading cites in support of its contention that the IRS issued the summons in order to obtain "pre-litigation discovery" is Rogers' statement that Weinger told him that "the auditors were being guided by district counsel who planned to litigate regardless of the results of the audit and notwithstanding whether petitioner were able to prove bad business debt through the audit." (Rogers Aff. ¶ 31.) It relies on *PAA Management, Ltd. v. United States*, 1992 WL 346314, 1992 U.S. Dist. LEXIS 17847 (N.D.Ill.1992), for the proposition that the motive to use materials obtained by summons in litigation is "substantial evidence that the summons were issued for an improper purpose." (Response to Counterpetition p. 23.) In *PAA Management*, however, the court found that the IRS agent explicitly admitted that the Service did not need the summoned materials for its examination, but rather that it *only* sought the material to "protect the government's interests" in Tax Court. *PAA Management, Ltd.*, 1992 WL 346314 at *5–6, 1992 U.S. Dist. LEXIS 17847 at 20–21. There is no such admission here.

Further, the IRS observes that even if Weinger did make the alleged statements alluding to future litigation, those statements do not exclude the possibility that the IRS had an *additional* legitimate purpose in seeking the summoned materials, *i.e.*, to determine the correctness of Sterling Trading's tax returns. (Reply Br. p. 5, n. 2.) Moreover, Weinger clearly states that "[he] did not indicate that the investigation was merely a tool to obtain discovery before litigation." (Weinger Decl. ¶ 25.) In this regard, the IRS notes that nothing bars agents from consulting with counsel. (Reply Br. p. 5.) Therefore, the Court finds that Roger's statement that the "auditors were being guided by district counsel" does not compel the conclusion that the *only* reason the IRS issued the summons was to obtain materials in anticipation of litigation.

In sum, the Court concludes that Sterling Trading has failed to carry its heavy burden to rebut the IRS's prima facie showing that it issued the summons for a legitimate purpose.

### ii. *Relevance*

Sterling Trading must point to specific facts and evidence to disprove the IRS's prima facie showing that the summoned materials are potentially relevant to determining the correctness of Sterling Trading's and Collin's tax returns.

Sterling Trading claims that the materials summoned are "relevant only to the IRS's plan to pursue John Rogers as a tax shelter promoter." (Response to Counterpetition p. 29.) In support of this claim, it attaches a declaration submitted by Weinger in another case, and references actions taken by "Sugarloaf," a petitioner in another case. (*Id.*; Reply Br. p. 6.) However, the fact that the materials sought may ultimately also be relevant to an investigation regarding John Rogers does not make them irrelevant to the purposes for which this summons was issued. The Court is not convinced that the mate-

rials the IRS seeks from Summitt about Sterling Trading are irrelevant to the IRS investigation into the correctness of those taxpayers' returns.

As discussed above, the Court finds that the IRS has made a prima facie showing of relevancy. The Court further finds that Sterling Trading has not rebutted the IRS's showing.

### iii. *Documents Not in IRS's Possession*

Sterling Trading claims that many of the summoned materials are already in the IRS's possession and relies on the many exhibits and the two declarations it attaches as proof. (Response to Counter-petition p. 31.) None of the exhibits or declarations addresses documents that pertain to Sterling Trading in particular, however. The exhibits include a letter from which the recipient's name is redacted, an engagement letter and invoices for Sugarloaf Fund LLC, quarterly reports for Good Karma, LLC, Nero Trading, LLC, and Lonsway Trading, LLC, a document entitled "Sugarloaf Agenda," and a powerpoint labeled "Multicred Investimentos." (*Id.* Exs. E–H.) Sterling Trading argues that Rogers has produced voluminous documents, including his lengthy diaries for the years 2003 and 2004. (*Id.* p. 33.) It claims Rogers has "appeared for testimony with IRS agents," and "Sugarloaf's accountant, John Gabel," was made available to the IRS. (*Id.*)

Even if true,[4] all of these contentions are immaterial, because Sterling Trading does not claim that the documents the IRS now seeks from Summitt regarding his involvement with Sterling Trading have already

been produced. As the IRS notes in reply, "[t]he summons seeks Summitt's testimony and documents in *his* possession regarding the specific transaction in which *he* participated." (Reply Br. p. 7.) Sterling Trading does not claim that Summitt has already testified before the IRS or that Sterling Trading or Summitt has produced any documents.

■ Moreover, even if the IRS had already received the materials summoned from *Rogers*, it would nevertheless be empowered request them from *Summitt*, because a "thorough investigation" can involve "review [of] records of the same ... transactions maintained by ... third-party recordkeepers, in order to ascertain whether the information in each set of documents is consistent." *PAA Management, Ltd.*, 1992 WL 346314 at *5, 1992 U.S. Dist. LEXIS 17847 at *18.[5]

Thus, the Court finds that Sterling Trading has failed to rebut the IRS's prima facie showing that it does not possess the materials summoned.

### iv. *Administrative Steps*

Sterling Trading's contention that the IRS's failure to notify Sterling Trading's representative as required by Treasury Regulation § 601.506(a) invalidates the summons lacks merit. *Smith v. United States*, 478 F.2d 398, 400 (5th Cir.1973) (holding that failure to comply with § 601.506(a) does not invalidate a summons); *Swann v. Alameda County Retirement Ass'n*, 122 F.3d 1074, 1997 WL 547934, *1 (9th Cir.1997) (citing *Smith* and finding that the "IRS' Statement of Proce-

---

**4.** The IRS disputes the assertions, including that Rogers has given testimony. (Reply Br. p. 7.)

**5.** Sterling Trading's argument that this rule does not apply here is nonsensical. The IRS is not seeking to "double check the records

provided by Rogers with the same records with which Rogers provided the IRS," but rather is seeking to "double check" the records provided by Rogers against the records *Summitt* may provide. (Response to Counter-petition p. 33.)

dural Rules is merely a procedural guideline for the IRS to follow and does not legally obligate the IRS to comply.")

As for Sterling Trading's other allegations that the IRS failed to comply with various procedures, it does not supplement the bare allegations in the petition with specific facts or evidence. (Response to Counter-petition p. 35.) It may not simply rest on the unsupported assertions in the petition. Therefore, Sterling Trading fails to rebut the IRS's prima facie showing that it complied with the applicable procedures.

In sum, Sterling Trading adds little in the way of "specific facts or evidence" to the conclusory allegations contained in the Petition to rebut the IRS's prima facie showing under *Powell.* Moreover, Sterling Trading appears to misunderstand the burden-shifting that applies here. For example, Sterling Trading protests the IRS's denial of an institutional posture to harass taxpayers as a "conclusory statement ... [that] flies in the face of the facts alleged in the petition." (Response to Counter-petition p. 20.) The facts alleged in the petition are, however, not enough to sustain Sterling Trading's burden. Whereas the IRS need only make a minimal showing that it acted in good faith, it is incumbent on Sterling Trading as petitioner to allege specific facts and put forward evidence that support the allegations in the Petition. It has not done so.

Therefore, the Court finds that Sterling Trading has failed to carry its heavy burden to show that the IRS acted in bad faith or that enforcement would constitute an abuse of the Court's process.

### C. *Constitutionality of the Summons*

■ Sterling Trading argues that the summons infringes on its constitutional right to free speech. (Response to Counter-petition p. 40.) However, this argument "lacks merit because it fails to recognize that the IRS is using the summons to acquire information to determine if [Sterling Trading and Summitt are] liable for civil penalties for promoting an abusive tax scheme, not for exercising ... [their] First Amendment right to criticize or protest against the IRS." *Steinhardt v. United States,* 326 F.Supp.2d 1113 1118 (C.D.Cal. 2003). Where the IRS has demonstrated, as it has here, that there is reason to suspect that the purportedly protected "speech was made in the context of promoting an abusive tax scheme," that speech is no longer protected by the First Amendment. IRS Office of Chief Counsel Notice CC–2006–022, pp. 3, 5 (Sept. 21, 2006); *see United States v. Bell,* 414 F.3d 474, 484 (3d Cir.2005) (holding that an injunction against "aiding and abetting violations of the tax laws" is consistent with the First Amendment). Thus, the Court finds that Sterling Trading has failed to make a showing of First Amendment infringement, so that no further inquiry is necessary here. *Cf. United States v. Trader's State Bank,* 695 F.2d 1132, 1133 (9th Cir.1983).

■ Sterling Trading's remaining constitutional arguments are similarly without merit. In connection with the contention that the summons impedes Sterling Trading's First Amendment right to petition the government for redress of grievances, the Court notes that this very action to quash the summons appears to be such a petition. Finally, the Court notes that while Sterling Trading claims the summons infringes on its Due Process rights, it does not identify any property or liberty interest of which the summons deprives them. It is well-established that "the mere issuance of a summons does not give rise to any due process concerns." *Mollison v. United States,* 481 F.3d 119, 125 (2d Cir.2007) (citing, inter alia, *United States v. Gilleran,* 992 F.2d 232, 233–34 (9th Cir.

1993)). Sterling Trading claims that the costs of complying with the IRS's summonses nationwide will be "in excess of $17 million and [will] cripple petitioners' businesses," but these costs seem to be anticipated largely in connection with the production of "original and translated negotiable paper." (Response to Counter-petition p. 41.) The Court notes that the summons at issue here does not request translations of any documents, nor does it request production of any negotiable paper. Moreover, Sterling Trading has provided no reason to conclude that the costs bourne by Summitt in complying with the summons may impact Sterling Trading's due process rights.

Therefore, the Court concludes that there are no constitutional impediments to enforcement of this summons.

### D. Conditional Enforcement is Not Permitted

 The law of this Circuit prohibits courts from placing conditions on the enforcement of IRS summons and requires that such summons be either enforced or quashed *in toto.* *United States v. Jose,* 131 F.3d 1325, 1329 (9th Cir.1997). Therefore, the Court declines to entertain Sterling Trading's request that it impose conditions on the enforcement of the summons at issue here.

### E. Sterling Trading is Not Entitled to an Evidentiary Hearing or Discovery

 Sterling Trading requests discovery and an evidentiary hearing.[6] In the Ninth Circuit, "[i]f taxpayer's allegations are sufficient, a limited evidentiary hearing is conducted." *United States v. Stuckey,* 646 F.2d 1369, 1374 (9th Cir. 1981). While "[p]re-hearing discovery is not generally mandated," post-hearing

"[d]iscovery is ... warranted if the trial court is not convinced that the summonses were issued for a proper purpose." *Id.* Here, the Court is convinced that the summons were issued for a proper purpose.

Indeed, even the authority Sterling Trading relies on recognizes that a hearing is not required unless the allegations of bad faith "raise[ ] sufficient doubt about the Service's purposes." *United States v. Church of Scientology,* 520 F.2d 818, 825 (9th Cir.1975). Sterling Trading also cites authority that acknowledges that "[i]f the taxpayer cannot develop even the evidence necessary to meet this standard, [*i.e.,* a showing of facts from which a court might infer a possibility of some wrongful conduct by the Government] then an evidentiary hearing would be a waste of judicial time and resources." *United States v. Kis,* 658 F.2d 526, 540 (7th Cir.1981). Because the Court finds that Sterling Trading does not present facts and evidence sufficient to rebut the IRS's prima facie showing that it issued the summons to Summitt in good faith, it concludes that there is no need to conduct an evidentiary hearing or permit discovery in this case.

### IV. Conclusion

For all the foregoing reason, the Court DENIES Sterling Trading's petition to quash the summons and GRANTS IRS's counter-petition to enforce the summons. The Court directs counsel for the IRS to submit a formal order consistent with the Court's order. In light of the Court's ruling on the petition, the petitioner's motion for an evidentiary hearing is moot.

---

**6.** Sterling Trading requests a hearing both in its Response to the IRS's Counter-petition to Enforce and by way of a separate motion. The Court addresses both pleadings here.