**Philip M. MILBURN, Jr. and Jean Cowden Milburn Aoki, Joint Independent Executors of the Estate of Hallie Jean Milburn, Deceased, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

No. SA–09–CA–762–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 13, 2010.

Charles M. Hornberger, David Jed Williams, Eduardo Luis Morales, Hornberger Sheehan Fuller & Beiter Incorporated, San Antonio, TX, for Petitioners.

Joseph A. Pitzinger, Attorney, Tax Division, Dallas, TX, for Respondent.

## ORDER

ORLANDO L. GARCIA, District Judge.

Petitioners Philip M. Milburn Jr. and Jean Cowden Milburn Aoki are the heirs and joint independent executors of the estate of their mother, Hallie Jean Milburn.[1] Petitioners filed a petition to quash an Internal Revenue Service administrative summons issued on September 3, 2009 to their lawyer Charles Hornberger during the federal estate tax examination of Mrs. Milburn's estate. (Docket no. 1.) On Sep-

---

1. Hallie Jean Milburn will be referred to in this order as "Mrs. Milburn" or "the decedent." Phillip Milburn will be referred to as "Milburn."

tember 17, 2009, the IRS also issued separate summonses to Milburn and Aoki for documents and testimony. The United States filed an amended cross-petition for enforcement of the three summonses. (Docket no. 8.) Petitioners have filed a motion and supplemental motion to quash all three summonses. (Docket nos. 11, 17.)

The IRS[2] issued the summonses as part of its investigation of several family limited partnerships created prior to the decedent's death and transfers of assets by Mrs. Milburn to Milburn and Aoki through the partnerships. The IRS contends. that the focus of all three summonses is the treatment of the partnerships and their assets in relation to the estate's federal estate tax liability, including the investigation of facts which may be relevant to the inclusion, taxation, and valuation of the partnerships and/or their assets for estate tax purposes. In other words, the issue as far as the IRS is concerned is whether the pre-death transfers of partnership interests should have been included in the decedent's estate.

On November 10, 2009, after the present summonses had been served, the IRS issued a notice of deficiency to the executors, Milburn and Aoki, in the amount of $1,295,083.[3] On January 22, 2010, the executors filed a petition in the Tax Court challenging the notice of deficiency.

■ The IRS has "expansive information-gathering authority" to determine tax liability under the Internal Revenue Code, including by issuance of summonses to taxpayers and third-party record holders. *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); 26 U.S.C. § 7602. To establish a prima facie case for summons en-

forcement under § 7602, the IRS must show: (1) the investigation is conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already within the IRS'S possession; and (4) the administrative steps required by the I.R.C. have been followed. *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir.2001) (citing *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)). The IRS need only make a "minimal" showing. *United States v. Gertner*, 65 F.3d 963, 966 (1st Cir.1995) ("This burden is not taxing, so to speak."). Typically, the showing is made through the affidavit or sworn declaration of the IRS officer who issued the summons. *See e.g. In re Newton*, 718 F.2d 1015, 1019 (11th Cir.1983); *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir.1993). In the present case, the IRS has made its prima facie showing through the sworn declaration of the examining attorney, Mary L. Courtney. (Docket no. 8, ex. 1.)

Once the IRS makes its prima facie showing, "the burden shifts to the taxpayer to disprove one or more of the *Powell* requirements, or to show that enforcement would be 'an abuse of process, *e.g.*, that the summons was issued in bad faith for an improper purpose.'" *Sugarloaf Funding, LLC v. U.S. Dept. of the Treasury*, 584 F.3d 340, 346 (1st Cir.2009) (quoting *Sterling Trading, LLC v. United States*, 553 F.Supp.2d 1152, 1155–56 (C.D.Cal.2008)). "The taxpayer's burden is heavy, and he must allege specific facts and evidence to support his allegations." *Id.*

Petitioners argue that the summonses should be quashed because (1) they seek documents protected by the attorney-client

2. For ease of reference, the Court will refer to respondent/cross-petitioner United States of American "the IRS."

3. A notice of deficiency permits an individual taxpayer to bring a Tax Court proceeding to challenge the tax liability claimed by the IRS in the notice. 26 U.S.C. § 6213.

privilege; (2) the Commissioner already has within its possession substantial portions of the documents sought; (3) the summonses are moot because the IRS has issued a notice of deficiency and petitioners have filed a petition in Tax Court, and therefore the issue of the amount of the tax deficiency will be resolved in that proceeding; and (4) the summonses and this enforcement proceeding are pursued in bad faith, for an illegitimate and extralegal purpose, and to harass the petitioners and Hornberger.

**Mootness, bad faith, and harassment.**

■ The IRS, in its supplemental pleading (docket no. 16), cites numerous cases that have held that a summons enforcement action is not mooted by a subsequent notice of deficiency or a Tax Court petition following such notice. *See, e.g., Sugarloaf Funding,* 584 F.3d at 348–49; *PAA Management Ltd. v. U.S.,* 962 F.2d 212, 218–19 (2d Cir.1992); *United States v. Gimbel,* 782 F.2d 89, 93 (7th Cir.1986); *see also United States v. Roundtree,* 420 F.2d 845, 848, n. 3 (5th Cir.1969) ("[p]roceedings in the tax court do not extinguish the Commissioner's summons power"). The validity of the summons is to be tested as of the date the summons is issued. *United States v. Kemper Money Market Fund,* 781 F.2d 1268, 1277–1278 (7th Cir.1986). Petitioners have not argued that the summonses had an improper purpose when they were issued. Moreover, the taxpayers' liability in the instant case is still subject to redetermination. *PAA Management,* 962 F.2d at 218–19; *Gimbel,* 782 F.2d at 93. Based on this case authority, the matter is not moot and it is not harassment or bad faith for the IRS to seek to enforce its summonses.

**Privilege, and whether the IRS already has the documents.**

The remaining questions are whether the documents sought are privileged and whether the IRS already has substantial portions of the documents sought within its possession. Hornberger has offered an amended privilege log which, he testified, contains all documents that might be relevant to the summonses that he has not already produced. PX–22. Hornberger produced under seal for *in camera* inspection the documents referenced in the privilege log. Hornberger claims the attorney-client privilege for all the documents.

Hornberger represented Mrs. Milburn in estate planning matters beginning in June of 2004. He assisted her in the formation of the two family limited partnerships under investigation by the IRS. He did not represent Milburn and Aoki in estate planning, but now represents them in this proceeding.

It is undisputed that Hornberger has been exceedingly cooperative with the IRS and has already produced numerous documents in response to the IRS'S requests over the course of the IRS'S investigation. Courtney testified at the hearing that her requests for documents were not fully met. For instance, she testified that she received no promotional materials, projections of tax savings, business plans, and computations. Hornberger testified that he has no promotional materials and no engagement letter or retainer agreement relating to his representation of Mrs. Milburn. And again, he testified that he has produced all documents requested with the exceptions of the documents included in his privilege log and documents he does not have. Courtney testified that she still needs medical information relating to the decedent because her death certificate indicated that she has suffered from dementia for seven years prior to her death. She also testified that she needs formation documents for the partnerships so she can discern the parties' motivations in forming

the partnerships. She also seeks the testimony of Milburn, Aoki, and Hornberger.

In contrast to her testimony in court, Courtney wrote a February 17, 2009 letter to Hornberger stating that she received in January 2009 the IRS engineer's appraisal of the oil and gas royalty interests in the decedent's partnership. (PX–24.[4]) Courtney then wrote, "This was the final information needed in order to write up my findings in this estate audit." *Id.* Hornberger testified that he had no indication that the IRS needed any more information until he received his summons on September 3, 2009. Courtney was unable to point to any specific request for additional information she made after this letter.

Courtney testified in court that she has not been provided the requested medical release related to the decedent's medical information. (PX–18.) Hornberger testified that during his representation of Mrs. Milburn, he observed no competency problems. Otherwise, there is no argument that the medical release should not be provided. Other than his argument that he has provided all non-privileged information requested, Hornberger offered no argument why petitioners should not be required to appear and provide testimony.

■■■ The attorney-client privilege: protects communications from the client to the attorney made in confidence for the purpose of obtaining legal advice. It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney.

*United States v. Neal,* 27 F.3d 1035, 1048 (5th Cir.1994). The party asserting a privilege has the burden to demonstrate that the privilege exists under the circum-stances presented. *United States v. Newell,* 315 F.3d 510, 525 (5th Cir.2002).

The Court has conducted an *in camera* review of the documents produced by Hornberger. The documents are primarily emails and letters, in addition to four charts prepared by Hornberger in the course of his estate planning work and setting up the partnerships. There are communications from Hornberger to Mrs. Milbum, his client. Most of these documents meet the *Neal* standards and are privileged. There are also communications between Hornberger and Milbum and Aoki, who were acting at the time as Mrs. Milburn's attorneys-in-fact pursuant to a durable power of attorney executed by the decedent. *See* PX–7. Most of these documents also meet the *Neal* standards and are privileged.

■■■ There are also communications in the documents between Hornberger and Mrs. Milburn's accountant (J. Raymond Strauch) and investment advisors (Rebecca Guerra and Roy Campbell). The attorney-client privilege "exists to protect [both] the giving of professional advice ... [and] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also United States v. Kovel,* 296 F.2d 918, 921–22 (2d Cir.1961) (Friendly, J.) (the attorney-client privilege "must include all other persons who act as the attorney's agents," including accountants). As Judge Friendly put it, often "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.* at 922 (footnote omitted). This circuit, like most, has adopted the *Kovel* test. *See, e.g. United States v. El Paso Co.,* 682 F.2d 530, 541

4. It was pointed out in court that the 2008 date on the letter was a typo.

(5th Cir.1982). Thus, an attorney claiming the attorney-client privilege for communications between an attorney and an accountant or other professional, or for documents prepared by such professional for an attorney, must prove that the professional services enabled the giving of legal advice. *United States v. Davis*, 636 F.2d 1028, 1043–44 (5th Cir.1981). The gist of Hornberger's testimony was that he consulted Mrs. Milburn's accountant and investment advisors to obtain the valuations and other information he needed about Mrs. Milburn's estate to enable him to properly advise her concerning the formation of the partnerships and other estate planning duties. *In camera* inspection bears out this testimony. Hornberger also consulted the legal expertise of other lawyers in his firm for the same purpose.

 Following its *in camera* examination of the documents, the Court concludes that the following documents are not privileged:

P00004—email from Strauch to Hornberger. Does not convey any confidential information.

P00011—email from Milburn to Hornberger. Does not convey any confidential information.

P00037—email from Gallegos to Hornberger. Does not convey any confidential information.

P01267–68—letter from Hornberger to Mrs. Milburn. Bill for estate planning services and transmittal letter.[5]

The petitioners' motions to quash (docket nos. 1, 11, 17) and the United States' cross-petition for enforcement of the summonses (docket no. 8) are GRANTED and DENIED in part. The request to quash the summonses relating to the production of documents is GRANTED except as to

---

5. Generally, client identity and fee arrangements are not protected as privileged unless revealing the identity of the client and fee arrangements would itself reveal a confiden-

the documents listed above found not to be privileged and the request for medical authorization. Petitioners shall provide copies to the IRS of the documents not found to be privileged within two weeks of this order. Petitioners shall also sign and return the medical authorization requested in plaintiff's exhibit 18 (April 28, 2008 fax from Courtney to Hornberger) within two weeks of this order. The Court finds that the rest of the documents in Hornberger's privilege log are privileged. The request to quash the summonses' request for testimony is DENIED as petitioners have provided no grounds why they should not appear and provide testimony concerning non-privileged matters.

All matters having been disposed of, the Clerk is instructed to close this case.

---

tial communication. *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes–Requena*, 926 F.2d 1423, 1431 (5th Cir.1991).