**PAA MANAGEMENT, LTD.,**
Petitioner–Appellee,

v.

**UNITED STATES of America,**
Respondent–Appellant.

No. 982, Docket No. 91–6275.

United States Court of Appeals,
Second Circuit.

Argued Feb. 13, 1992.

Decided April 27, 1992.

Randall A. Hack, Chicago, Ill. (Barbara M. Angus, Kirkland & Ellis, of counsel), for petitioner-appellee.

David E. Sipiora, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for respondent-appellant.

Before: FEINBERG and MINER, Circuit Judges, and HAIGHT, District Judge.*

MINER, Circuit Judge:

Respondent-appellant United States of America appeals from an order of the United States District Court for the Southern District of New York (Knapp, J.). The order quashed administrative summonses, issued by the Internal Revenue Service ("IRS") pursuant to section 7602 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq. ("I.R.C." or "Code"), to petitioner-appellee PAA Management, Ltd. ("PAAM"), and to Arthur Andersen & Co., Spear, Leeds & Kellogg, Wagner Stott Clearing Corp., and Merrill Lynch, Pierce, Fenner & Smith. PAAM is the general partner, and "tax matters partner" under the Code, see I.R.C. § 6231(a)(7), of Professional Arbitrage Associates ("PAA"), a partnership organized under the laws of Bermuda. The other entities to which summonses were issued are "third-party recordkeepers" under the Code with respect to PAA, see I.R.C. § 7609(a)(3). The summonses required production of certain documents, in the possession of the summonsed parties and relating to transactions undertaken by PAA, in connection with an IRS administrative investigation of PAA and its partners for the 1983–85 tax years. The return dates of the summonses fell on or after the date on which a final partnership administrative adjustment ("FPAA")

---

* Hon. Charles S. Haight, Jr., United States District Judge for the Southern District of New York, sitting by designation.

was sent by the IRS to each of PAA's partners for each of the 1983–85 tax years. An FPAA is somewhat analogous to a tax deficiency notice for an individual. *See* I.R.C. § 6223(a).

In quashing the summonses, the district court emphasized the timing of the return dates, and relied primarily on section 6223(f) of the Code, which provides that only one FPAA may be sent to each partner for each tax year in question. Judge Knapp apparently construed section 6223(f) to mean that the IRS's determination of partner tax liability set forth in the FPAA is not subject to subsequent revision, and that the issuance of an FPAA necessarily brings to an end the investigative role of the IRS. It further appears that the district court concluded, for these reasons, that the summonses issued in this case could serve no legitimate purpose and/or sought irrelevant information, and that section 6223(f) constitutes an express limitation on the summons authority of the IRS under circumstances such as those revealed here. Judge Knapp also attached importance to a collateral Tax Court proceeding commenced by PAAM challenging the FPAAs, and the ability of the IRS in that proceeding to discover the information sought by the summonses.

For the reasons that follow, we disagree with the district court's view of the effects on this case of section 6223(f) and the collateral Tax Court proceeding. Accordingly, the order of the district court quashing the summonses is reversed, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

Partnerships such as PAA, unlike individuals and corporations, are not taxable entities under the Code and do not pay taxes as such. *See* I.R.C. § 701. Instead, each partner pays taxes only as an individual, based on the portion of partnership income allocable to him (as well as on such other income as may be earned by the partner from non-partnership activities). *See id.* However, income derived from the partnership, called "partnership item[s]" by

the Code, *see* I.R.C. § 6231(a)(3), generally must be determined at the partnership level as if the partnership were a taxable entity, *see* I.R.C. § 6221, and in that connection, partnerships are required to file informational tax returns, *see* I.R.C. § 6031. Each partner's individual tax return must be consistent, as to partnership items, with the partnership's return. *See* I.R.C. § 6222(a).

Administrative and judicial proceedings relating to the determination of partnership items are separate under the Code from those relating to the determination of individual income. *See* I.R.C. §§ 6221–6233 (Subchapter C of Chapter 63 of Subtitle F, relating to partnership items, and added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA")); I.R.C. §§ 6211–6216 (Subchapter B of Chapter 63 of Subtitle F, relating to individual deficiencies). While the Code does not specifically define the FPAA, it is evident from the context, structure and purpose of the applicable Code provisions that an FPAA gives notice of the amount of partnership income properly allocable, in the view of the IRS, to each partner for individual tax purposes. *See also Clovis I v. Commissioner,* 88 T.C. 980 (1987) (FPAA is notice that IRS has made final administrative determination for partnership items for particular tax years, as individual deficiency notice is notice of final administrative determination of individual tax liability). In general, an FPAA must be sent to each partner. *See* I.R.C. § 6223(a). The tax matters partner of the partnership, being the one designated to handle all tax matters of the partnership, may then petition for judicial review of the partnership items of income as determined in the FPAA. *See* I.R.C. § 6226(a). Such partnership level proceedings, the subject of Subchapter C, must be completed before an individual tax deficiency attributable to any partnership item may be determined under Subchapter B. *See* I.R.C. § 6225. Likewise, proceedings relating to individual taxpayers involve a notice of deficiency sent by the IRS to the taxpayer, setting forth the amount of tax owing, *see* I.R.C. §§ 6211, 6212, which the taxpayer may

then challenge by petition to the Tax Court, *see* I.R.C. § 6213.

The IRS is authorized by the Code to make administrative "inquiries, determinations, and assessments" relating to all internal revenue taxes owing but unpaid. *See* I.R.C. § 6201. The IRS further is authorized, "[f]or the purpose of ascertaining the correctness of any return ... [or] determining the liability of any person for any internal revenue tax" to "examine any books, papers, records, or other data which may be relevant or material." I.R.C. § 7602(a)(1). In connection with its investigative authority, the IRS is empowered to issue administrative summonses to "any person having possession, custody, or care of books of account containing entries relating to the business of the [taxpayer or other entity being investigated]." I.R.C. § 7602(a)(2). A summons may direct production by the summonsed party of "such books, papers, records, or other data ... as may be relevant or material." *Id.* Summonses issued to third-parties are subject to some additional procedural requirements added by the TEFRA. *See* I.R.C. § 7609.

Against this statutory backdrop, the IRS began in the spring of 1986 what became a long examination of PAA and its more than 200 partners, focusing on the 1983–1985 tax years. PAA is engaged in the business of arbitrage and other forms of securities trading. Accordingly, the IRS particularly scrutinized the gains and losses attributable to PAA's trading of stocks, stock options and other securities, as well as certain interest expenses claimed by PAA in connection with the financing of its securities transactions. PAA provided numerous requested documents to the IRS, including analyses that PAA was required to create on its own. Over the years, and as permitted by the Code, PAA also agreed to extend the statute of limitations period applicable to each partner for assessment of individual deficiencies. *See* I.R.C. § 6229(b). However, on October 24, 1990, PAA refused in writing to extend the limitations period beyond December 31, 1990, the expiration date then in effect.

Between December 18 and December 28, 1990, the IRS issued summonses for additional documents to PAAM, as well as third-party summonses to the third-party recordkeepers, all of whom possessed documents relating to PAA securities transactions. The return date of the PAAM summons was December 28, 1990, and the return dates of the third-party summonses fell in January 1991. On December 28, 1990, the IRS issued an FPAA to each PAA partner, relating to the 1983–85 tax years.

Neither PAAM nor any of the third-party recordkeepers complied with the summonses. Instead, PAAM moved in the district court, on January 10, 1991, for an order quashing the summonses, and the government cross-moved for enforcement. On March 5, 1991, PAAM, as tax matters partner, petitioned the Tax Court for review of the FPAAs. In a brief Memorandum and Order entered on July 29, 1991, the district court granted PAAM's motion to quash the summonses (although it did not expressly deny the government's cross-motion for enforcement). The district court denied the government's motion for reargument on August 30, 1991, and this appeal followed. The Tax Court proceedings presently are continuing in the regular course.

## DISCUSSION

In order to make a prima facie case for enforcement of a summons under section 7602 of the Code, the government must show that (i) a legitimate purpose exists for the investigation, (ii) the summons may be relevant to that purpose, (iii) the information sought is not already in the possession of the government, and (iv) the procedural and administrative steps required by the Code for serving a summons have been followed. *See United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). The burden then shifts to the taxpayer or other entity challenging the summons to object to the summons " 'on any appropriate ground.' " *Id.* at 58, 85 S.Ct. at 255 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)).

As the language of section 7602 indicates, the summons power of the IRS under the Code is quite broad, and courts are constrained to exercise caution before circumscribing the summons authority. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (noting that "the very language of § 7602 reflects ... a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry. In light of this explicit statement by the Legislative Branch, courts should be chary in recognizing exceptions to the broad summons authority of the IRS") (citing *Milwaukee v. Illinois,* 451 U.S. 304, 315, 101 S.Ct. 1784, 1791, 68 L.Ed.2d 114 (1981)); *St. German of Alaska Eastern Orthodox Catholic Church v. United States,* 840 F.2d 1087, 1092 (2d Cir.1988) (noting that IRS "enjoys broad summons power") (citation omitted).

In view of the Code's broad delegation of summons authority to the IRS, the requirements that a summons have a legitimate purpose and relevance have been interpreted liberally in favor of the IRS. *See United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980) (legitimacy viewed in general as that which "is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code"). The Supreme Court accordingly has given somewhat extreme examples of purposes that would be improper in connection with a summons: harassing the taxpayer, putting pressure on the taxpayer to settle a collateral dispute, and similar kinds of bad faith abuse. *See United States v. Stuart,* 489 U.S. 353, 360, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989) (citing *Powell,* 379 U.S. at 58, 85 S.Ct. at 255); *see also Reisman,* 375 U.S. at 449, 84 S.Ct. at 513 (use of summons power for the purpose of obtaining evidence for use in criminal prosecution, or in breach of attorney-client privilege, also improper). Likewise, in *Arthur Young,* the Court noted that the use of the phrase "may be relevant" in section 7602 "reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation.... As

a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS, ... [and] the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *Arthur Young,* 465 U.S. at 814, 104 S.Ct. at 1501 (citation omitted); *see also United States v. White,* 853 F.2d 107, 112 (2d Cir.1988), *cert. dismissed,* 493 U.S. 5, 110 S.Ct. 273, 107 L.Ed.2d 6 (1989).

As a corollary to its broad view of the IRS's summons authority under section 7602, the Court has emphasized that in general, the "[summons] authority should be upheld *absent express statutory prohibition* or substantial countervailing policies," *Euge,* 444 U.S. at 711, 100 S.Ct. at 878 (emphasis added), and should not be circumscribed "absent unambiguous directions from Congress," *United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975) (citations omitted); *see also Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 318, 105 S.Ct. 725, 729, 83 L.Ed.2d 678 (1985). "If the broad latitude granted to the IRS by § 7602 is to be circumscribed, that is a choice for Congress, and not this Court, to make." *Arthur Young,* 465 U.S. at 817, 104 S.Ct. at 1502 (citing *Euge,* 444 U.S. at 712, 100 S.Ct. at 878).

With the foregoing in mind, we turn to the summonses at issue in this case. The district court's rationale for quashing the summonses, though not fully explained in its brief Memorandum and Order, and the bases for affirmance urged by PAAM, appear in the main to embrace two related grounds. The first is that section 6223(f), added to the Code by the TEFRA, allows the IRS to "mail" only one FPAA per partner per tax year absent a "showing" of fraud or malfeasance, *see* I.R.C. 6223(f), and therefore constitutes an express statutory prohibition on the use of the summons power and renders the summonses illegitimate and/or irrelevant under the circumstances presented here. According to this line of reasoning, section 6223(f) renders an FPAA a final determination as to the partnership items allocated to individual part-

ners for tax purposes; and because each PAA partner had been sent, prior to or on the return dates of the summonses, an FPAA for each tax year at issue in this case, the summonses could serve no cognizable purpose. The second ground is that the initiation by PAAM of Tax Court proceedings to challenge the FPAAs, and the availability of discovery in those proceedings, brought the IRS's investigative role to a close and therefore also rendered the summonses illegitimate or irrelevant.

Preliminarily, we must reject the government's contention that, even assuming section 6223(f) otherwise limits the IRS's summons authority, the provision does not apply in this case because of the exception for fraud or malfeasance, see I.R.C. § 6223(f). We understood the government to claim at oral argument that for purposes of section 6223(f), the IRS is entitled, at all times and for no particular reason, to the benefit of a presumption of fraud. The government correctly points out that under *Powell*, the IRS does not need probable cause to suspect fraud in order to obtain enforcement of a summons under section 7602. *See Powell*, 379 U.S. at 57, 85 S.Ct. at 254. However, *Powell* did not address section 6223(f), which explicitly refers (unlike section 7602) to a "showing" of fraud by the government. The record here is devoid even of an allegation, much less a showing, by the government of fraud in this case. We also note that in *Powell*, unlike in this case, an affidavit submitted by the IRS in support of its petition for enforcement at least stated a "reason to suspect" fraud. *See id.* at 50.

■ On the other hand, we cannot agree with the asserted grounds for quashing the summonses in this case. The language of section 6223(f) does not mention the summons power. Rather, the provision says only that the IRS may not "mail" more than one FPAA per tax year per partner, absent a showing of fraud or malfeasance. For this reason alone, we would be reluctant to conclude that section 6223(f) constitutes an "express" limitation on IRS summons authority. In any event, and most significantly, the Code elsewhere makes

quite clear that the provision is not to be interpreted as a limit on the section 7602 summons power. Section 6230(h) of Subchapter C provides:

> **Examination authority not limited.**— Nothing in this subchapter [i.e., sections 6221–6233] shall be construed as limiting the authority granted to the [IRS] under section 7602 [the summons provision].

Code § 6230(h). Therefore, far from providing an express limit on the summons power, Congress has stated its intention that the summons power *not* be circumscribed by section 6223(f).

Nor does an FPAA, in our view, determine partnership items of income with such finality that a summons whose return date falls on or after the issuance of an FPAA is, as a matter of law, illegitimate or irrelevant for this reason alone. The parties have not brought to our attention, and we have been unable to discover, any case law directly addressing this precise problem. There is precedent, however, for the proposition that, in the case of individual taxpayers, issuance of a deficiency notice does not necessarily render a later summons illegitimate. In *United States v. Gimbel*, 782 F.2d 89 (7th Cir.1986), the government served a summons on the taxpayer's lawyer in May 1982. In March 1983, the government sent the taxpayer a deficiency notice, and moved for enforcement of the previously-served summons a few months later. The taxpayer and the lawyer argued that the summons served no legitimate purpose because the deficiency notice had been sent and the IRS therefore had "already determined" liability. *See id.* at 90. In rejecting this argument, the Seventh Circuit stated that, while it might be proper to quash a summons "if, for example, the summons had become stale or the investigation had become mooted by *a final, irrevocable determination of the taxpayer's liability for the years in question,*" there was nothing improper about the summons where the amount of the deficiency was still subject to redetermination. *See id.* at 93 (emphasis added). In *Gimbel*, the Seventh Circuit cited and followed *Bolich v. Rubel*, 67 F.2d 894 (2d Cir.1933), a decision of this Court taking a similar approach to

the summons power under the Revenue Act of 1926.

PAAM correctly points out that the *Gimbel* and *Bolich* cases involved individual taxpayers, that the instant case involves a partnership, and that administrative and judicial proceedings for individual taxpayers on the one hand, and partnerships on the other, are governed by different Code provisions. PAA further insists that under the Code, individual tax deficiency notices may be easily revised subsequent to their issuance, *see* I.R.C. § 6212, while FPAAs may not be. While we are mindful of the differences between Subchapter B's treatment of individual deficiency notices, and Subchapter C's treatment of FPAAs, we are unpersuaded that the distinctions are material in relation to the issues presented here.

While the Code mandates that the provisions of Subchapter B "shall not apply to the assessment or collection of any computational adjustment" under Subchapter C,[1] I.R.C. § 6230(a)(1), each Subchapter provides its own functionally similar limits on the number of deficiency notices or FPAAs, as the case may be, that the IRS may send. *Compare* I.R.C. § 6212(c)(1) (in the case of an individual taxpayer, if IRS has mailed a deficiency notice and if taxpayer timely files a petition in the Tax Court, IRS may not "determine any additional deficiency of income tax for the same taxable year" except in the case of fraud) *and* I.R.C. § 6212(d) (only "with the consent of the taxpayer" may IRS rescind original deficiency notice, and thereby send another) *with* I.R.C. § 6223(f) (only one FPAA may be mailed by IRS absent showing of fraud). Most importantly, though, each Subchapter vests the court reviewing the IRS's administrative determination with the ultimate authority to revise that determination. Subchapter B provides that "the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary." I.R.C. § 6214(a) (similar to predecessor provision in Revenue Act of 1926). While Subchapter C does not specifically provide the IRS with authority to request that the amount of tax set forth in the FPAA be increased by the court, Subchapter C nonetheless provides that the "court with which a petition is filed in accordance with this section shall have jurisdiction to determine *all partnership items of the partnership* for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners." I.R.C. § 6226(f) (emphasis added).

■ Similarly, the initiation of judicial proceedings to review an IRS administrative determination does not necessarily obviate the legitimacy of further IRS administrative investigation or create substantial countervailing policies militating against enforcement of a summons. It has been the law in this Circuit for some time, in individual tax deficiency cases, that the mere existence of collateral Tax Court or other judicial proceedings does not deprive the IRS of its investigative powers. In *National Plate & Window Glass Co. v. United States*, 254 F.2d 92 (2d Cir.), *cert. denied*, 358 U.S. 822, 79 S.Ct. 35, 3 L.Ed.2d 63 (1958), we noted that because of the Tax Court's authority to redetermine individual deficiencies, the power of the IRS under section 7602 is not "extinguished" merely by the filing of a petition in the Tax Court challenging the deficiency asserted by the IRS. *See id.* at 92–93. We made the same point in *Bolich*, holding that the IRS's summons power "still persists" despite the initiation of judicial proceedings to review an administratively determined deficiency, grounding this holding primarily in the authority of the Board of Tax Appeals, the predecessor of the Tax Court, to increase the amount of the deficiency. *See Bolich*,

---

1. The term "computational adjustment" means "the change in tax liability of a partner which properly reflects the treatment … of a partnership item." Code § 6231(a)(6).

67 F.2d at 895; *see also Gimbel*, 782 F.2d at 93.

We realize that in both *National Plate* and *Bolich* we also referred to the IRS's authority to ask the court to increase the amount of a deficiency, and that Subchapter C, unlike Subchapter B, is silent in this regard. However, *National Plate* and *Bolich* appear to us ultimately to have turned on the revisory powers given to the courts, powers that are substantially the same under both Subchapter B and Subchapter C of the Code. In view of the purpose of the Code and the IRS, and the broad authority given to courts by section 6226(f) to determine partnership items, we do not believe that the reasoning of *National Plate, Bolich* and *Gimbel* is inapplicable to the issues presented in this case. In short, an FPAA appears to be "final" under the Code only in the sense that the IRS generally may not send more than one FPAA. The FPAA is not "final" in the sense that its issuance necessarily obviates the need for further information, brings the curtain down on the IRS's administrative or investigative role, or muzzles the IRS from requesting that the court invoke its authority finally to determine partnership items.

■ This is by no means to say that the IRS may resort to the summons power whenever the discovery or evidentiary rules in a judicial proceeding block access to or use of desired information. The purpose of the summons, which is an investigative and enforcement tool, *see Arthur Young*, 465 U.S. at 814, 104 S.Ct. at 1501, differs from the purpose of discovery. We emphasized in *Bolich* that the summons power "is not a power to procure or perpetuate evidence at all; it is strictly inquisitorial," and that the IRS's need to prepare its case by further examination "is quite another matter from producing evidence in support of it." *Bolich*, 67 F.2d at 895. We also note that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell*, 379 U.S. at 58, 85 S.Ct. at 255; *see also Bolich*, 67 F.2d at 895 (emphasizing power of court to prevent "oppression" of taxpayer in court

by summons power). In this case, however, we perceive no abuse or bad faith in relation to the collateral Tax Court proceedings commenced by PAAM. The summonses themselves were issued several weeks prior to the commencement of the Tax Court proceedings (and indeed prior to the issuance of the FPAAs), and we have in the past looked to the date of issuance of the summons in determining its validity under section 7602. *See In re Magnus, Mabee & Reynard, Inc.*, 311 F.2d 12, 16 (2d Cir.1962), *cert. denied*, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963).

■ For similar reasons, we cannot agree with the suggestion that the prospect of an eventual court challenge by a taxpayer or similar entity to an IRS determination, and the likelihood that otherwise legitimate and relevant information sought by the IRS might eventually be discovered in that proceeding, deprives the IRS of its authority to summons the information at an earlier point in time in the process. While a summons issued after the commencement of judicial proceedings might give rise to a different conclusion, we are not presented here with such a circumstance. *Cf. Ash v. Commissioner of Internal Revenue*, 96 T.C. 459, 468 (1991) (where summons was issued subsequent to notice of deficiency, but prior to commencement of civil Tax Court proceeding, summons not viewed as undermining Tax Court discovery rules).

We are constrained, however, to remand this case to the district court for further proceedings, rather than with instructions to order enforcement of the summonses. The government urges that IRS agents have submitted affidavits declaring in substance that the four prongs of the *Powell* test have been met, and correctly notes that such affidavits ordinarily are sufficient to make the prima facie case for enforcement, *see White*, 853 F.2d at 111–12; *St. German*, 840 F.2d at 1092; *cf. Stuart*, 489 U.S. at 360, 109 S.Ct. at 1183 (IRS affidavits as evidence of good faith). However, PAAM disputes important factual matters, insisting among other things that the IRS has coerced and harassed

220

PAA, did not follow the proper procedures for serving the summonses, and already possesses a number of the summonsed documents.

The district court heard oral argument on PAAM's motion to quash and the government's cross-motion for enforcement. However, Judge Knapp made no findings of any kind beyond his conclusions relating to section 6223(f) and the Tax Court proceedings, and we are unable at this point to resolve the important factual disputes evidently existing between the parties. We note that an actual evidentiary hearing on IRS abuse is not required absent a " 'substantial preliminary showing' of such abuse," *United States v. Millman,* 765 F.2d 27, 29 (2d Cir.1985) (citations omitted), and therefore leave to the discretion of the district court whether to hold such a hearing in the course of resolving the outstanding issues.

## CONCLUSION

The order of the district court quashing the summonses is reversed and the case is remanded for further proceedings consistent with the foregoing.