UNITED STATES of America and Earl E. Hart, Revenue Agent of the Internal Revenue Service, Petitioners-Appellants,

v.

Stanley P. GIMBEL, Respondent-Appellee.

No. 84–2120.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1985.

Decided Jan. 17, 1986.

George L. Hastings, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for petitioners-appellants.

Jeffrey A. Kaufman, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for respondent-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This action arises out of respondent-appellee Stanley P. Gimbel's refusal to comply with a summons issued by the Internal Revenue Service (the "IRS" or the "Government"), pursuant to 26 U.S.C. § 7602(2) (1982). The Government filed a petition in the United States District Court for the Eastern District of Wisconsin seeking enforcement of the summons. *See* 26 U.S.C. §§ 7402(b), 7604(a). The district judge dismissed the Government's petition. We reverse.

I

On May 18, 1982 IRS Agent Earl E. Hart served a summons on Gimbel, an attorney for James J. and Karen Valona, requiring him to produce the financial records he used to prepare the Valonas' tax returns for the years 1979 and 1980. On June 17, 1982 Gimbel appeared before Hart, but refused to fully comply with the summons, arguing *inter alia* that some of the summoned documents were subject to absolute immunity because of the attorney-client privilege.

On March 25, 1983 the Government issued to the Valonas a notice of deficiency, pursuant to 26 U.S.C. § 6212(a), because the statute of limitations on the 1979 and 1980 tax years was due to expire. The statement attached to the notice appeared to show that the deficiency was determined in part from portions of the Valonas' tax returns that were alleged to have been unsubstantiated during Hart's investigation and his questioning of Gimbel on June 17, 1982.

On May 17, 1983, one year after the summons had been served, and one and one-half months after the notice of deficiency had been issued, the Government filed a petition in the district court seeking enforcement of the summons. On June 20, 1983, the Valonas petitioned the United States Tax Court for a redetermination of

the deficiency. _See_ 26 U.S.C. § 6213(a). The Commissioner of Internal Revenue answered the Valonas' petition on August 11, 1983. On October 27, 1983, the district court issued an order to show cause why the summons should not be enforced, giving Gimbel thirty days in which to respond to the Government's petition.

The order to show cause was served on Gimbel on November 7, 1983. On December 6, 1983 Gimbel responded with a motion for a more definite statement and with a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. In his motion to dismiss, Gimbel set forth the facts that we have outlined above; he argued that on the basis of these facts the district court lacked subject matter jurisdiction.

In support of his motion to dismiss, Gimbel argued that whether a summons has a legitimate purpose under _United States v. Powell_, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964),[1] is to be determined as of the date of the petition for enforcement of the summons. In this case the IRS investigation no longer served any legitimate purpose because the Commissioner of the IRS "had already determined" the Valonas' tax liability for the years in question when he issued to them a notice of deficiency on March 25, 1983 (before the Government's petition for enforcement was filed), and because the Government had not argued that any of the exceptions set forth in 26 U.S.C. § 6212(c) permitting a redetermination of that liability applied. The investigation simply could not be conducted pursuant to a legitimate purpose because the IRS could no longer redetermine the Valonas' tax liability for the years 1979 and 1980. Gimbel also argued that the Valonas' tax liability was now within the exclusive jurisdiction of the United States Tax Court and the "Tax Court has full power to order discovery, if appropriate, of all materials requested by" the IRS summons. Gimbel also intimated that the Government was acting in bad faith in now attempting to enforce the summons more than a year and a half after the summons had been issued and after the Tax Court had assumed jurisdiction over the underlying tax liabilities.

In response to Gimbel's motion to dismiss, the Government argued that it was entitled to enforcement because it had established the four requirements for enforceability set forth in _Powell_, 379 U.S. at 58, 85 S.Ct. at 255. In particular, it argued that its investigation, for which the summoned records were required, was being conducted pursuant to the legitimate purpose of "determin[ing] properly the tax liability of James J. and Karen Valona for the taxable years ended December 31, 1979 and December 31, 1980," (Petitioner's Response to Respondent's Motion to Dismiss at 2), and that the summons could not have been issued to harass the taxpayers because it was issued before the Tax Court proceedings had been commenced, _id._ at 4.[2] On April 10, 1984 the district court granted Gimbel's motion to dismiss, finding that the Government had conceded all of the relevant facts and had "utterly [failed] to rebut

---

1. In that case, the Court held that the IRS is entitled to enforcement of the summons if it shows that (1) the investigation is pursuant and relevant to a legitimate purpose; (2) the information is not already in the Commissioner's possession; (3) the Secretary or his delegate has determined that the examination is necessary; and (4) the other administrative steps required by the Internal Revenue Code have been followed. _Powell_, 379 U.S. at 57–58, 85 S.Ct. at 254–55.

   The Court added a further consideration when it stated that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." _Id._

2. In particular, the Government argued that
   [s]ince the summons was issued prior to the commencement of any litigation before the tax court or even the filing of the notice of deficiency, it is impossible to understand how the issuance of the summons could be interpreted as one for harassment or to coerce capitulation in the tax-court case. Since the relevant time period is the time of the issuance of the summons, _see_ ... [_Powell_, 379 U.S. 48, 85 S.Ct. 248; _United States v. Kis_, 658 F.2d 526 (7th Cir.1981); _United States v. Turner_, 480 F.2d 272 (7th Cir.1973)], the Internal Revenue Service passes this third test of validity found in _United States v. Powell (supra)_. _Id._ at 4.

... [Gimbel's] legal argument." District Court Decision and Order at 3.

On appeal the Government raises two issues in support of its claim that the judgment of the district court should be reversed. First, it argues that the district judge erroneously considered the fact that a notice of deficiency had issued when deciding whether the investigation was being conducted pursuant to a legitimate purpose because whether an investigation has a legitimate purpose must be evaluated on the basis of facts as they exist at the time the summons is issued. Second, it argues that even if the district judge could consider that fact the IRS summons' authority was not affected by the subsequent issuance of a notice of deficiency or the Valonas' filing of a Tax Court petition because of the "continuing need for summoned information in order to make the final determination of a taxpayers' liability the most accurate" and because the Government could amend the notice of deficiency pursuant to 26 U.S.C. § 6212(c) if circumstances warranted.

Because the Government argued on appeal that the legitimate purpose of the summons was not affected by the Tax Court proceeding and because Gimbel argued below that the Valonas' tax liabilities for the years in question were now subject to the exclusive jurisdiction of the Tax Court and the Government could obtain the documents that it needed for that proceeding through the Tax Court's discovery rules,[3] we ordered supplemental briefing by the parties on the issue of what effect, if any, the availability of the Tax Court's

discovery rules had on the issues pending before us.[4]

## II

At the outset we note that there is a serious question of whether the Government has waived the two issues it now presents on appeal.[5] It is well-settled that an issue not presented in the district court cannot be raised for the first time on appeal and form a basis for reversal unless exceptional circumstances either require or warrant consideration of the issues, *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1220–21 (7th Cir.1984). Nowhere in its response to Gimbel's motion to dismiss did the Government specifically address the effect, if any, that the notice of deficiency or the Tax Court proceedings had on the investigation's legitimate purpose. The Government did not explicitly suggest that the court could not look to facts occurring after the issuance of the summons to determine whether *Powell's* requirement of a legitimate purpose had been satisfied. The Government also did not specifically dispute Gimbel's argument that once the notice of deficiency had been issued and the petition for redetermination had been filed in the Tax Court, the Tax Court retained exclusive jurisdiction over the issue of the Valonas' tax liabilities, that the Valonas' tax liabilities had been finally determined because none of the exceptions of 26 U.S.C. § 6212(c) applied, and that the Government could obtain all of the relevant documents it needed through the Tax Court's dis-

---

**3.** Although the Government argues that this issue was not presented to this court, we note that we may affirm the judgment of the district court on any ground that the record supports and that was raised, but not passed on, in the court below. *Garza v. Henderson,* 779 F.2d 390, 395 (7th Cir.1985).

**4.** Specifically we asked the parties to address the following issues:
(1) Can the Government obtain taxpayer records from a nonparty attorney through the Tax Court's discovery and/or subpoena power?

(2) If the Government can obtain the records through the Tax Court, is it precluded from issuing a subpoena pursuant to 26 U.S.C. § 7602(2)?

**5.** The Government itself initially raised the issue of whether it had waived these two arguments, *see* Brief at 14 n. 6, apparently in an effort to explain the district judge's statement that the Government virtually conceded "that ... [Gimbel's] position is correct." We therefore do not raise the issue of waiver *sua sponte* although it is beyond cavil that we may do so.

covery procedures. The Government merely responded that the "records requested in the summons are necessary to determine properly the tax liabilities of [the Valonas] for ... the ... years ... 1979 ... 1980."

In its brief to this court, the Government argues that it did point out to the district judge "that the relevant question is whether there existed a proper purpose at the time the summons was *issued....*" In support of this argument it cites to page 4 of its Response to the Motion to Dismiss, quoted *supra* at note 2. The Government further argues that, although it did not explicitly raise below the issues of whether the notice of deficiency affects the investigation's legitimate purpose and whether any of the exceptions of 26 U.S.C. § 6212(c) apply,[6] because it argued that the records requested by the summons remained "necessary to determine properly the tax liabilities of the [taxpayers]" and because the district judge knew that the Tax Court proceedings were pending, it should have been obvious to the district judge that the "necessity to 'determine properly the tax liabilities' could only have been relevant to the Tax Court proceedings." Reply brief at 3. Thus, it argues that it properly preserved these two issues for appeal.

We agree with the Government that, although its Response was certainly less than paradigmatic, it did not wholly ignore the issues. The statements made by the Government on page 4 of its Response relating to the relevant time period for consideration suggest that anything occurring after the issuance of the summons is simply irrelevant to the four-prong analysis under *Powell.*[7] It also asserted a continuing need to *finally* determine the taxpayers' liability. Thus, "the question becomes one of sufficiency, i.e., whether in light of the policies behind the rule of waiver ... [the Government] sufficiently raised the issue[s] below so that waiver should not apply." *Yorger,* 733 F.2d at 1221.

We hold that the Government sufficiently raised these issues below. The Government did not contest the facts alleged by Gimbel—i.e., that a notice of deficiency had issued and that a petition for redetermination had been filed in the Tax Court and, as a result, the district judge accepted them as true. Its arguments that the four-prong analysis of *Powell* was unaffected by events occurring after the issuance of the summons and that it still needed the summoned records below to properly determine the tax liability suggested that the legitimate purpose was unaffected by the deficiency notice and the Tax Court proceedings. *Cf. South v. Rowe,* 759 F.2d 610, 613 (7th Cir.1985) (court will hesitate to find waiver when the party has sufficiently alleged facts that directly support the legal argument alleged to have been waived). We also note that the Government's arguments are solely legal questions that do not depend on disputed facts or the necessity for further factual development. Thus, given that the Government did not totally fail to raise these purely legal issues below, we find that the Government has not waived them. *See Charlton v. United States,* 743 F.2d 557, 561 n. 5 (7th Cir.1984);

---

6. In its reply brief, the Government stated: "Initially, we candidly acknowledge ... that our position with respect to this issue was not presented to the District Court in the clearest possible fashion." *Id.* at 2. We admonish the Government in the future to be more careful and to present its arguments to the district judge in a much clearer fashion. District judges, who already carry a heavy workload, cannot be burdened with the additional task of deciphering a party's cryptic (and unhelpful) legal argument, even when the issues may be fairly simple. This is particularly true when that party is the federal government which has sufficient resources with which to have itself represented by competent counsel.

7. On the other hand, none of the cases cited by the Government in its Response, *see United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Kis,* 658 F.2d 526 (7th Cir.1981), *cert. denied sub nom. Salkin v. United States,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Turner,* 480 F.2d 272 (7th Cir.1973), support the Government's first argument. In fact, as the Government observes on appeal, *Kis,* 658 F.2d at 526, decided by this court, contains language which directly undermines the Government's position. *See id.* at 541.

*Yorger,* 733 F.2d at 1223; *Lucas v. Hodge,* 730 F.2d 1493, 1501 (D.C.Cir.1984). "The ... [Government's] oversight below is ,not so much in failing to raise the ... [issue that the summons was still enforceable], but more accurately is a failure to field and accurately respond to ... [Gimbel's] legal interpretation of ... [26 U.S.C. § 6212(c)]." *Yorger,* 733 F.2d at 1223.

### III

Having decided to reach the merits, we can easily dispose of this case. In *United States v. Kemper Money Market Fund,* 781 F.2d 1268, 1277–78 (7th Cir.1986), this court held that the validity of the summons is to be tested as of the date of issuance of the summons. *See also Garpeg, Ltd. v. United States,* 583 F.Supp. 799, 801–03 (S.D.N.Y.1984). Gimbel does not contest that the summons had a legitimate purpose at the time it was issued. Thus, unless for some other reason enforcement might constitute an abuse of the court's process, *see supra* note 1, the Government was entitled to enforcement of the summons.[8]

In our view, Gimbel has not demonstrated that the pending Tax Court proceedings deprive this court of jurisdiction to enforce the summons or that enforcement might constitute an abuse of the court's process. *See Bolich v. Rubel,* 67 F.2d 894, 895 (2d Cir.1933).[9] A district court might properly deny enforcement of a summons that had a legitimate purpose when issued if, for example, the summons had become stale or the investigation had become mooted by a final, irrevocable determination of the taxpayer's liability for the years in question. But the taxpayer's liability in the instant case is still subject to redetermination pursuant to 26 U.S.C. § 6212(c). Thus, the Government still has a legitimate interest in properly determining the taxpayer's liability and the documents it seeks are relevant to that determination. It cannot be said, therefore, that the Government's attempt to enforce the summons is being made in bad faith. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 1501–02, 79 L.Ed.2d 826 (1984); *United States v. Texas Heart Institute,* 755 F.2d 469, 481 (5th Cir.1985). Similarly, the mere fact that the Government might be able to obtain some[10] or all of the documents through the Tax Court procedures does not by itself compel the conclusion that the Government's attempt to enforce the summons is being made in bad faith. *See United States v. Arthur Andersen Co.,* 623 F.2d 725, 728 & n. 5 (1st Cir.1980) (IRS is not barred from invoking its summons authority under section 7602 merely because the Department of Justice has recourse to available bankruptcy discovery procedures).

We therefore reverse the judgment of the district court denying enforcement of the summons and remand for further proceedings on the issue of which, if any, of the taxpayers' documents in Gimbel's possession are protected from disclosure by the attorney/client privilege.

8. Much of the Government's argument is directed to pointing out the alleged dilatory tactics of the taxpayers. It is clear, however, that in this case the Government was largely responsible for the delay. It moved to enforce the summons eleven months after Gimbel indicated that he could not comply and two months after the notice of deficiency had been issued. In addition, had the Government presented its case to the district judge with greater clarity, the necessity for this appeal might have been obviated.

9. *Bolich* was decided before the Tax Court had formally adopted its discovery rules. Nonetheless, it is clear that even at the time *Bolich* was decided, the Board of Tax Appeals (the Tax Court's predecessor) had "full power to compel the production of evidence, documentary and testamentary." *Id.* at 895.

10. We are unable to conclude from the briefs and records filed in this appeal that the Government would be able to obtain all of the documents that it needs or should have access to through the Tax Court discovery procedures.