TWIN PALMS RESORT, LLC, a Florida Limited Liability Company, by C.B. HARBOUR III, Petitioners,

v.

UNITED STATES of America, Respondent.

Case No. 09–61062–CIV.

United States District Court, S.D. Florida.

Nov. 4, 2009.

Joseph Andrew Diruzzo, III, Law Office of Marjorie Roberts, P.C., St. Thomas, VI, for Petitioners.

Christopher Macchiaroli, U.S. Attorney's Office, Miami, FL, Richard D. Euliss, United States Department of Justice, Washington, DC, for Respondent.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DE-NYING PETITION TO QUASH

PAUL C. HUCK, District Judge.

## I. BACKGROUND

### A. Virgin Islands Tax Scheme

In 1960, apparently in an effort to spur economic development in the United States Virgin Islands, Congress authorized preferential tax treatment for residents of the Virgin Islands. 26 U.S.C. § 934 allows the Virgin Islands to reduce its income tax for bona fide residents with respect to income derived from sources in, or effectively connected with the conduct of a trade or business in, the Virgin Islands. In response, the Virgin Islands created the Economic Development Program ("EDP"), which provides qualifying businesses an income tax credit of up to 90 percent.

The IRS is aware of a common tax scheme in which United States taxpayers fraudulently claim to be bona fide residents of the Virgin Islands in order to claim the tax credit. *See* IRS Notice 2004–45, 2004 WL 1405867 (July 12, 2004). The scheme typically involves a taxpayer who purports to (i) become a Virgin Islands resident, (ii) terminate his or her existing employment relationship, and (iii) become a partner of a Virgin Islands limited liability partnership that qualifies for preferential treatment under the EDP. The partnership then enters into a contract with the taxpayer's former employer, under which the taxpayer provides substantially the same services to the employer as before. The former employer pays the partnership, which then distributes money to the taxpayer in the form of payments for services or profits. The taxpayer then claims the income on a tax return filed with the Virgin Islands Bureau of Internal Revenue rather than with the IRS. The taxpayer claims that the EDP income tax benefits granted to the partnership flow through to his or her individual income tax liability. The result is that the taxpayer's income tax liability is approximately 10 percent of what it would have been in the United States.

## B. Investigation of C.B. Harbour III and Melinda Harbour [1]

The United States alleges that C.B. Harbour III and Melinda Harbour participated in a scheme similar to that outlined above. The Harbours are United States citizens from Tennessee. C.B. Harbour has been involved in real estate and construction in the United States and owns several businesses based in the U.S., including Twin Palms Resort, LLC, a Florida limited liability company. In 2001, the Harbours purportedly moved to the Virgin Islands. Upon moving to the Virgin Islands, C.B. Harbour formed a Virgin Islands corporation, Century Management, Inc., through which he invested in Corporate Service Group ("CSG"), a Virgin Islands company that qualifies under the EDP. After becoming a partner in CSG, C.B. Harbour agreed to provide a number of consulting services to his U.S.-based companies, including Twin Palms. He billed his U.S. companies through CSG. His companies would pay the money owed into a joint CSG/Harbour account. C.B. Harbour would then transfer the funds to a Virgin Islands account held by Century Management. Then he would transfer the funds to the Harbours' personal accounts in the Virgin Islands, before finally transferring the funds to their Twin Palms accounts in the U.S. The Harbours filed tax returns with the Virgin Islands Bureau of Internal Revenue, rather than with the IRS, for the tax years 2001 through 2004. The Harbours claimed that the income C.B. Harbour received for his consulting services was eligible for the 90 percent tax credit.

The IRS is conducting an examination of the Harbours for the 2001, 2002, 2003, and 2004 tax years. According to the agent investigating the Harbours, the IRS is focusing on two questions: (1) whether the Harbours were bona fide residents of the Virgin Islands during the years at issue; and (2) if so, whether the income they reported on their Virgin Islands tax returns was truly derived from or connected to the Virgin Islands. On June 19, 2009, as a result of the examination, the IRS issued an "examination report" and an accompanying "30–day letter," [2] setting forth

---

1. The facts in this section come primarily from the first Declaration of Francisco Garza, the IRS agent investigating C.B. Harbour III and Melinda Harbour. (*See* D.E. # 13–1.)

2. The letter accompanying an examination report is called a "30–day letter" because the taxpayer has 30 days to respond.

proposed changes to the Harbours' tax liability for the years under investigation.

On June 29, 2009, ten days after issuing the examination report, the IRS issued the summons at issue in this case. It is a third-party summons directed to AmSouth Bank, requesting documents relating to a bank account owned by Twin Palms.[3] AmSouth Bank complied with the summons, sending two packages to the IRS that presumably contain the documents requested by the summons. The IRS agent investigating the Harbours, however, has not reviewed the contents of the packages and will not do so until notified that the summons was not quashed.

### C. Procedural History

On July 17, 2009, Twin Palms filed the present Petition to Quash IRS Third–Party Summons (D.E. # 1). The government filed a Motion to Dismiss Petition to Quash (D.E. # 13) on September 17, 2009. A telephonic status conference was held on October 20, 2009, during which the government's motion to dismiss was converted to a motion for summary judgment.

## II. ANALYSIS

### A. Test for Quashing an IRS Summons

 When the government seeks to enforce an IRS summons, it must establish a *prima facie* case for enforcement by showing that: (1) the investigation is for a legitimate purpose; (2) the inquiry will be relevant to that purpose; (3) the informa-

tion sought is not already in the IRS' possession; and (4) the IRS followed the administrative steps required by the Internal Revenue Code for issuance of a summons. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Here, however, the government is not seeking to enforce a summons,[4] but rather has moved to dismiss (now a motion for summary judgment) a petition to quash a third-party summons. In this situation, "the burden shifts immediately to the petitioner to establish a valid defense to the summons." *Knauss v. United States,* 28 F.Supp.2d 1252, 1254 (S.D.Fla.1998) (Moreno, J.) (internal quotation marks omitted). The burden, therefore, is on Twin Palms to establish a valid defense to the summons. Twin Palms tries to establish a defense by arguing that the summons fails to comply with each of the four *Powell* criteria. Thus, the following analysis tracks the four *Powell* criteria.

### B. Legitimate Purpose

The first *Powell* factor requires that an IRS investigation be for a legitimate purpose, Twin Palms argues that the IRS did not have a legitimate purpose for issuing the summons because the IRS has already made a final determination of the Harbours' tax liability for the years under investigation, and because the statute of limitations has already expired for those years.

#### i. Determination of Tax Liability

The examination report issued by the IRS contains proposed changes to the

---

3. The summons requests the following:
 1. Copy of all bank statement[s] to AmSouth Bank Account # 36766766 in the name of Twin Palms Resort LLC for the period beginning September 1, 2001 thru the period ending January 31, 2005.
 2. Please provide copies of all checks and/or wire transfer instructions for any amounts in excess of $50,000 for the period of September 1, 2001 thru January 31, 2005.

3. Please provide copies of all deposit slips for this account for the period of September 1, 2001 thru January 31, 2005.
 (Summons Attachment A.)

4. As noted in the Background section, AmSouth has already complied with the summons.

Harbours' tax liability for the years 2001–2004. Twin Palms argues that the examination report contains a final calculation of the Harbours' tax liability. According to Twin Palms, by issuing the examination report ten days before the third-party summons, the IRS had already made a final determination of the Harbours' tax liability when it issued the summons. (*See* Petition at pp. 2–3; Response at pp. 17–18.) Accordingly, the IRS did not have a legitimate purpose for issuing the summons.

The government counters that the summons serves a legitimate purpose because the IRS has not completed the examination and assessment process, and the Harbours' tax liability is still subject to change. According to the government, an examination report, rather than being a final determination of tax liability, contains *proposed* changes that are subject to challenge.[5] The taxpayer can either accept the proposed changes or appeal them within the IRS. The IRS does not issue a statutory notice of deficiency until after issuance of the examination report and, if the taxpayer appeals, completion of the appeals process. Even after the IRS issues a notice of deficiency, the taxpayer can challenge the proposed changes in Tax Court.

The government cites three cases to support its argument that the issuance of the examination report before the summons does not affect the validity of the summons: *United States v. Gimbel,* 782 F.2d 89 (7th Cir.1986); *PAA Management, Ltd. v. United States,* 962 F.2d 212 (2d Cir.1992); and *Sugarloaf Funding, LLC v. U.S. Department of the Treasury,* 584 F.3d 340 (1st Cir.2009). As Twin Palms correctly points out, these cases do not deal

with the exact situation in this case—where the IRS issued a summons *after* issuing an examination report. Rather, all of the cases deal with a summons that was issued before issuance of a notice of deficiency or before issuance of the analogous notice of final partnership administrative adjustment (FPAA) in the partnership context. Nevertheless, all three cases support the general proposition that a summons can be enforced even after the IRS has issued a notice of deficiency or FPAA if the taxpayer's liability remains subject to redetermination. *See Gimbel,* 782 F.2d at 93 (rejecting the argument that a summons had no legitimate purpose once a notice of deficiency had been issued, because the taxpayer's liability was subject to redetermination); *PAA Management,* 962 F.2d at 219 (finding that FPAAs issued after the issuance of summonses but before the return dates of the summonses did not obviate the IRS's need for information); *Sugarloaf,* 584 F.3d at 348–50 (enforcing a summons even though the IRS had already issued an FPAA). According to the court in *Gimbel,* "[a] district court might properly deny enforcement of a summons that had a legitimate purpose when issued if, for example, the summons had become stale or the investigation had become mooted by a *final, irrevocable* determination of the taxpayer's liability," but not if the taxpayer's liability "is still subject to redetermination." *Gimbel,* 782 F.2d at 93 (emphasis added).

The government argues that the Harbours' tax liability is still subject to redetermination. First of all, the Harbours are challenging the examination report's findings with the IRS Office of Appeals. As a result, the IRS has not issued a notice of deficiency. Plus, even after the

5. The 30-day letter accompanying the examination report issued to the Harbours stated: "We have enclosed an examination report showing proposed changes to your tax for the period(s) shown above. Please read the report, and tell us whether you agree or disagree with the changes."

IRS issues a notice of deficiency, the Harbours could petition the Tax Court.

The government is correct that the Harbours' tax liability is still subject to change. Under 26 U.S.C. § 6212, if the IRS mails a notice of deficiency to a taxpayer and the taxpayer timely files a petition with the Tax Court, the IRS cannot determine any additional deficiency for that tax year. By negative implication, where, as here, the IRS has not mailed a notice of deficiency, it appears that the IRS can still determine an additional deficiency. Section 6212 also contains exceptions that allow changes to a taxpayer's liability after issuance of a notice of deficiency, such as in the case of fraud. In addition, the Tax Court has jurisdiction to redetermine the correct amount of a deficiency, even if the amount is greater than the deficiency determined by the IRS. *See* 26 U.S.C. § 6214(a); *see also PAA Management,* 962 F.2d at 218 (discussing the ways in which a notice of deficiency can be revised after issuance). Accordingly, the government had a legitimate purpose for issuing the summons.

Twin Palms argues that the fact that the summons was issued *after* the examination report should lead to a different result from cases like *Gimbel.* In *Gimbel,* the summons was issued before a notice of deficiency. (The court did not say anything about timing with respect to an examination report.) According to Twin Palms, the existence of the examination report meant that the summons was already moot when issued. Twin Palms does not cite any cases to support its argument that the timing of the summons with respect to the examination report should alter the outcome. Furthermore, the examination report is a precursor to the notice of deficiency; in both *Gimbel* and this case, the summons was issued before a notice of deficiency. Assuming it is true that the Harbours' tax liability is

subject to change, as the Court does, the summons had a legitimate purpose when issued and still has a legitimate purpose, despite being issued after the examination report.

█ For these reasons, the government still has a legitimate, recognized need for the information sought by the summons. The IRS could change the Harbours' tax liability through the appeals process or before (and perhaps even after) issuance of the notice of deficiency. The Tax Court could also redetermine the Harbour's tax liability. Therefore, the IRS had a legitimate purpose for issuing the summons, even though it was issued after the examination report.

### ii. Statute of Limitations

Next, Twin Palms argues that the IRS did not have a legitimate purpose for issuing the summons because the statute of limitations for assessments for the years 2001–2004 had already expired. (*See* Petition at pp. 3–4; Response at pp. 11–17, 19–21). 26 U.S.C. § 6501 establishes a 3–year statute of limitations for assessments after a tax return is filed, subject to certain exceptions (such as a false or fraudulent return with the intent to evade tax, or a failure to file a return). According to Twin Palms, the 3–year statute of limitations began to run when the Harbours filed tax returns with the Virgin Islands Bureau of Internal Revenue. It also argues that none of the exceptions to the statute of limitations applies in this case. Thus, according to Twin Palms, the IRS can no longer determine the Harbours' tax liability or collect on any liability for the years under investigation, and therefore has no legitimate use for the information sought by the summons.

This argument lacks merit. The Eastern District of Virginia rejected Twin Palms' exact argument in the same type of

situation last year, finding that the statute of limitations is not a proper defense to a summons. *See United States v. McHenry,* 552 F.Supp.2d 571, 574–75 (E.D.Va.2008). The Court notes that the law firm representing Twin Palms also represented McHenry, and they copied verbatim approximately eleven pages from a brief submitted in *McHenry,* including a six-page argument on the issue of the statute of limitations. (Compare Twin Palms' Response at pp. 6–17 with McHenry's Supplemental Memorandum at pp. 2–12.) The court in *McHenry* dealt with the argument as follows:

> The three-year statute of limitations contained in 26 U.S.C. § 6501(a) plainly applies only to assessment, not to summons or any other investigatory procedure. This finds explicit confirmation in *Powell,* where the Supreme Court stated that "The present three-year limitation on assessment of ordinary deficiencies relieves the taxpayer of concern for further assessments of that type, but it by no means follows that it limits the right of the Government to investigate with respect to deficiencies for which no statute of limitations is imposed." *Powell,* 379 U.S. at 56 n. 15, 85 S.Ct. 248....
>
> Of course, if following enforcement of the summons here the IRS attempts to assess taxes as to which the statute of limitations applies, McHenry will be free to assert the running of the statute as a defense to payment.... Worth noting ... is that enforcement of the summons may reveal that McHenry has a tax liability for the tax years in question as to which the statute of limitations does not apply—*as might be the case if the IRS discovers that McHenry was not in fact a bona fide resident of the Virgin Islands during the tax years in question*

*(and so failed to file a U.S. return),* or that he filed a false or fraudulent return. The purpose of the summons is to allow the IRS to determine whether such liability exists, and *Powell* clearly recognizes that such investigations are a legitimate purpose underlying enforcement of a summons. In short, McHenry's statute of limitations challenge to the first element of the IRS's *Powell* showing is unavailing to bar the issuance of the summons.

*McHenry,* 552 F.Supp.2d at 574–75 (emphasis added).

■ Twin Palms argues that the *McHenry* decision is flawed, stating that *"there is a statute of limitations imposed on* the IRS to assess a deficiency by 26 U.S.C. § 6501." (Response at p. 20.) Twin Palms' argument appears to be based on an assertion that the IRS has not alleged fraud, and therefore cannot show that the fraud exception to § 6501 might apply. In essence, Twin Palms is also trying to refute a statement in *McHenry* that it is not "necessary for the IRS to allege fraud or any other ground that would render the statute of limitations inapplicable." [6] *McHenry,* 552 F.Supp.2d at 575. However, even if that statement in *McHenry* were incorrect, the government *has* alleged that the information sought by the summons will show that an exception to the statute of limitations applies. First, the government seems to allege that the Harbours filed "a false or fraudulent return with the intent to evade tax." 26 U.S.C. § 6501(c)(3). For example, the government "suspects that the Harbours *knowingly* and in *bad faith* held themselves out as USVI residents and failed to file returns with the IRS...." (Reply at p. 4.) Second, the government specifically al-

---

6. The court explains that "it is well settled that the IRS need not meet any probable cause standard to obtain judicial enforcement of a summons." *McHenry,* 552 F.Supp.2d at 575 (citing *Powell,* 379 U.S. at 56, 85 S.Ct. 248).

leges that the failure-to-file exception in § 6501(c)(4) will apply if it turns out that the Harbours are not bona fide Virgin Islands residents. Thus, Twin Palms' attempt to discredit the *McHenry* decision fails.

### C. Relevance to the Investigation

The second *Powell* factor requires that the information sought be *relevant* to a legitimate purpose. Twin Palms argues that the information and documents sought by the subpoena are irrelevant to determining either the Harbours' true residency or their tax liability. (*See* Petition at pp. 4–6; Response at pp. 21–24.)

The government, on the other hand, explains that the standard for potential relevance in summons enforcement cases is very low—the information only has to "shed some light" on an aspect of the taxpayer's return. *See United States v. Arthur Young*, 465 U.S. 805, 814, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) ("The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility.... [T]he Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense."); *see also La Mura v. United States*, 765 F.2d 974, 981 (11th Cir.1985) ("The government's burden of showing relevance in this context is slight. If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is deemed to be relevant.").

### i. Relevance to Determining Residency

Regarding residency, Twin Palms argues that residency is determined by a multi-factor[7] subjective test, and that the information and documents sought from AmSouth could not possibly have any bearing on any of the factors. The government responds that "[w]ire transfer and asset shifting patterns between the Harbours' accounts in the USVI and those ultimately controlled by the Harbours in the United States also may be relevant to determining whether the Harbours are bona fide residents of the USVI" and "could be evidence of the Petitioners' subjective intent of residency." (Motion at p. 11 & n. 7.)

■ The government is correct that the information may be relevant to determining the Harbours' residency, especially given the low standard for relevance in this context. *See Mollison v. United States*, 481 F.3d 119, 124 (2d Cir.2007) ("Although the materials' relevance to the question of residency is less apparent, we cannot rule out the possibility."). Thus, Twin Palms' argument that the information is not relevant to determining residency fails.

---

7. The factors are "(1) intention of the taxpayer; (2) establishment of his home temporarily in the foreign country for an indefinite period; (3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment; (4) physical presence in the foreign country consistent with his employment; (5) nature, extent and reasons for temporary absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; (11) good faith in making his trip abroad; whether for purpose of tax evasion." *Sochurek v. Commissioner*, 300 F.2d 34, 38 (7th Cir.1962)

### ii. Relevance to Determining Source of Income

Twin Palms next argues that the summons is not relevant to determining the Harbours' tax liability. One of the purposes of the IRS investigation is to determine whether the Harbours' income was "sourced" to the Virgin Islands or "effectively connected to" a Virgin Islands trade or business. (First Garza Declaration at ¶ 8.) According to Twin Palms, this inquiry is fruitless because the phrases are not defined. (Response at p. 23.) Twin Palms cites a case from the U.S. District Court of the Virgin Islands, which found that the phrase "income effectively connected with the conduct of a trade or business within the Virgin Islands" as used in § 934(b)(1) was void for vagueness. *United States v. Auffenberg, Jr.*, No. 1:07–cr–47, 2008 WL 4115997, at *12 (D.Vi. Aug. 26, 2008). That was because the Secretary of the Treasury had failed to issue regulations, as required by 26 U.S.C. § 934(b)(4),[8] that would provide guidance on how to determine whether income falls within that category. *Auffenberg*, 2008 WL 4115997, at *12 ("Congress itself has essentially declared the language at issue in § 934(b) to be void for vagueness without further definition.").

The government does not directly address this argument. It simply responds that "[i]f the income is sourced from a trade or business in the United States, then it is subject to federal taxation." (Motion at p. 11.) Nevertheless, there are a few problems with Twin Palms' argument. First, *Auffenberg* was a criminal case, and the court was understandably reluctant to impose criminal liability based on an undefined phrase. It does not necessarily follow from *Auffenberg*, however, that the phrase is too vague for the calculation of tax liability. In fact, the Virgin Islands Bureau of Internal Revenue must have an understanding of the phrase. Otherwise, neither the Bureau of Internal Revenue nor taxpayers could determine which income is subject to the Virgin Islands' preferential tax treatment. *See* 26 U.S.C. § 934(a), (b)(1).

Furthermore, § 934(b)(4) was amended in 2004 to remove any reference to the Virgin Islands; the statute no longer requires the Treasury to issue guidance on how to determine whether income is sourced from the Virgin Islands. In addition, according to the court in *Auffenberg*, the Treasury finally promulgated regulations under § 934(b)(4) in 2005. Accordingly, the reasoning behind Twin Palms' argument and the court's opinion in *Auffenberg* is no longer valid. Accordingly, this argument also fails.

### D. Bank Statements Already in the Possession of the IRS

The third *Powell* factor requires that the information sought not already be in the IRS' possession. The IRS already has in its possession two bank statements from the date range requested by the summons.[9] Twin Palms argues that the summons should be quashed for those two bank statements. (*See* Petition at p. 6; Response at p. 5.)

The government responds that the third *Powell* factor is not a complete ban on

8. 26 U.S.C. § 934(b)(4) states: "The determination as to whether income is derived from sources within the United States or is effectively connected with the conduct of a trade or business within the United States shall be made under regulations prescribed by the Secretary." Before 2004, it included the phrase "the Virgin Islands or" before each instance of the phrase "the United States."

9. The Harbours provided the two bank statements to the IRS in March 2007 in response to an Information Document Request. (*See* Response Exhibit A (D.E. #21–1) at p. 2.)

seeking information that is already in the IRS' possession, but rather a prohibition of unnecessary summonses. For support, the government cites *United States v. Davis*, 636 F.2d 1028 (5th Cir.1981) [10]:

> Read in context, we construe the 'already possessed' principle enunciated by *Powell* as a gloss on § 7605(b)'s prohibition on 'unnecessary' summonses, rather than an absolute prohibition against the enforcement of any summons to the extent that it requests the production of information already in the possession of the IRS.

*Id.* at 1037. The government states that the summons itself clearly was reasonably necessary. As for the two bank statements already in the IRS' possession, it argues that it included those statements to avoid confusion as to which statements were subject to the summons. Further, receiving extra copies could help confirm the accuracy of the prior production—a "legitimate investigatory tool," according to the government. (Reply at p. 8.)

█ Twin Palms' argument here also fails. The First Circuit and the Second Circuit recently dealt with this same issue and noted that the IRS is entitled to obtain records from third parties to ascertain the accuracy of records already provided by the taxpayer. *See Sugarloaf*, 584 F.3d at 350–51; *Mollison*, 481 F.3d at 124. Thus, the summons should not be quashed for the two bank statements already in the IRS' possession.

### E. Compliance with Required Administrative Procedures

█ The fourth *Powell* factor requires that the IRS follow the administrative steps required by the Internal Revenue Code for issuance of a summons. Twin Palms argues that the summons fails this factor because it was not issued pursuant to a valid delegation order. (*See* Petition at p. 6–7; Response at p. 24–27.) First, Twin Palms argues that no delegation order gives the IRS the authority to investigate bona fide residents of the Virgin Islands. This argument lacks merit. Even bona fide Virgin Islands residents are required to file tax returns in the United States if they have not fully reported their income and fully paid their taxes to the Virgin Islands Bureau of Internal Revenue. *See* 26 U.S.C. § 932(c)(4). Thus, Congress has extended the IRS' authority to enforce the Internal Revenue Code in the Virgin Islands in the same manner as if it were a state. *See* 26 U.S.C. § 7651(1). "Accordingly, even bona fide Virgin Islands residents fall within the purview of the IRS." *Mollison*, 481 F.3d at 123. Furthermore, Twin Palms' argument assumes the Harbours' are bona fide residents of the Virgin Islands, but that, of course, is one of the main issues the IRS is investigating.

Second, Twin Palms argues that the summons is invalid because it did not comply with Delegation Order No. 4, Rev. 22, 1997 WL 33479254 (Aug. 18, 1997), which requires that the issuing officer's manager sign the summons. (*See* Response at p. 27.) Twin Palms points out that an individual signed "for" the group manager. The government does not respond to this argument, but Twin Palms does not cite any cases to support its argument, and the argument ignores basic agency principles.

Third, in the Petition, Twin Palms also argues that the summons fails the fourth *Powell* factor because the IRS did not follow the procedures of the Tax Implementation Agreement between the United States and the Virgin Islands. In its Re-

---

**10.** As the government notes, the *Davis* opinion is dated February 12, 1981, so it is binding precedent on this Court *See Bonner v. City* of *Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

sponse, however, Twin Palms withdraws this argument.

Finally, in its Response, Twin Palms argues that the summons must be quashed because the IRS has failed to show that the case has not been referred to the Justice Department for criminal proceedings, as required by 26 U.S.C. § 7602. (*See* Response at p. 4.) This argument also fails because the government clarifies in its Reply that there is no Justice Department referral in effect. (*See* Reply at p. 8; Second Garza Declaration at ¶ 2.)

## III. CONCLUSION

For the reasons above, it is hereby ORDERED and ADJUDGED that the government's motion for summary judgment is GRANTED and Twin Palms' petition to quash is DENIED. This case is CLOSED.